**FORD v COMMERCIAL MOTOR FREIGHT, INC**

Ohio Appeals, 1st Dist, Hamilton Co

Decided Nov 3, 1937

Sam Lazerwith, Cincinnati, for appellee.
Harmon, Colston, Goldsmith & Hoadly, Cincinnati, Henry B. Street, Cincinnati, and Allen I. Pretzman, Columbus, for appellant.

**OPINION**

By MATTHEWS, J.
The plaintiff in the Common Pleas Court of Hamilton County, from which this appeal is prosecuted, recovered a judgment for damages on account of personal injuries. resulting from being struck by a coil of wire which was rolled down a plank, one end of which rested upon the tailgate of a trailer, attached to a motor truck, backed against the curb, and the other end upon the public sidewalk, one or two feet from the entrance to the place of business of The Arco Wire Spring and Supply Company on Water Street in the city of Cincinnati. The plaintiff, at the time she was struck was passing along the space on the sidewalk between the lower end of the plank and the entrance to The Arco Wire Spring and Supply Company.

It is not clear who owned the truck from which the coil of wire was rolled. Perhaps there is no competent evidence upon that subject. But it is entirely clear that the defendant was under a contract to carry a load of wire from Youngstown, Ohio, and deliver it to The Arco Wire Spring and

Supply Company at its place of business in Cincinnati, Ohio, and that this wire was being unloaded in pursuance of that contract.

There were two persons on this truck and trailer at the time. It is admitted that one, Harry Nauman, was an employee of the defendant. Lawrence Hacker was the other person and it was he who started the coil down the plank. He did this in the presence of Nauman, and, undoubtedly, with his knowledge and acquiescence. Hacker testified that he was employed by Howard Hawbecker to drive this truck or tractor, and the tractor extended over steam railroad tracks in the street and was preventing the passage of a train, and that he voluntarily joined Nauman in unloading the coils, so as to hasten the conclusion of the task. Nauman testified that he didn't ask Hacker to help him, and continuing said:

"Q. You allowed him to help you unload?

A. That was his own doings. He was working for himself. He wouldn't tell me.

Q. You didn't tell him he shouldn't unload it?

A. No, sir.

Q. You didn't stop him from helping you?

A. If he was going to help me it was so much better for myself."

There is nothing in the record showing what the relation was between defendant and Howard Hawbecker. We are left to infer that the latter was an independent contractor.

The plaintiff in her petition expressly alleged that Hacker was an employee of the defendant, and based her right to recover on the employer's liability for the negligence of the employee.

In the defendant's original answer, it expressly admitted that at the time alleged "It had in its employ one Lawrence Hacker." This answer was verified by the agent of the defendant. While the court permitted the defendant to withdraw this answer, that circumstance did not destroy its evidentiary value as an admission, (17 O. Jur. 307; 4 R.C.L. 494), and, it was introduced in evidence by the plaintiff.

In addition, the plaintiff offered in evidence a certified copy of a report of the accident made by the defendant to the Ohio Public Utilities Commission. The court sustained an objection to its intro-

duction in evidence, but upon what ground, the record does not disclose.

The defendant moved for an instructed verdict, both at the close of the plaintiff's evidence, and at the close of all the evidence. In view of the admission in the original answer, it is clear that the court properly overruled these motions.

In this state of the record the court charged the jury on the issue of defendant's responsibility for the conduct of Hacker, as follows:

"The defendant in this case denies that this accident was caused through any negligence on its part. If this accident was caused by negligence, but it was by the negligence of some one other than the defendant or its servants or persons whom the law says are liable, or who can make rather the defendant liable under the law, then your verdict could not be in favor of the plaintiff against this defendant. However, it is the law that when one is engaged in a dangerous occupation, or is doing that which is dangerous work, he cannot shield himself by delegating the right to do that work to some other person even though that person is not employed by the one whose duty it was to do that work. And where a servant has actual charge and control and supplies the will or the motive for an act, he having a third person to do an act for him, if that negligence on the part of the third person,— that is, if the servant was in actual control and directing, and if the act was in such immediate vicinity of his activity in control in the situation, his acts would make the servant, himself, negligent, or if that servant was negligent and that act was done within the scope of the authority of the servant, then the employer would be liable. That is, in this case, if you find from the evidence that this accident was caused by the driver of a truck, and that that truck was not under control and direction of the defendant, yet one who was a servant of the defendant directed and controlled that driver in the unloading of this wire, and that driver was negligent, that negligence, then would become the negligence of the employer himself; that is, if the act was done under the conditions that I have just stated.

If, on the other hand, the driver's act was wholly separate and distinct from any obligation or duty of the defendant in this case, then the defendant would not be liable for any acts of such driver.

First, it will be observed that the court

concluded that the issue and evidence required an instruction on the theory that the injury was inflicted while an inherently dangerous transaction was in progress. Was this conclusion justified by the pleadings and the evidence?

It is to be observed that no allegation of this sort is found in the pleadings. As to the evidence, it tended to show that the defendant was bound by contract to deliver coils of wire weighing from 100 to 150 pounds each, and that this involved conveying them in some way across a public sidewalk into a place of business. That contract was in process of being performed and the plaintiff was injured by the particular manner of performance selected by those so engaged and not by any method or manner selected by the defendant. In 14 R.C.L. 88, it is said:

"While generally speaking the intrinsic danger of the undertaking is one which inheres in the performance of the contract and results directly from the work to be done, not from collateral negligence of the contractor, considerable difficulty is experienced in determining just what works are of such a dangerous character as to impose liability upon the employer. Ordinary building constructions are not within this description and the employer avoids liability where the work is done by an independent contractor. Nor is a landowner liable for the negligence of an independent contractor employed to build a dam on the premises, for the work is not inherently dangerous but becomes so only when negligently performed."

In 21 **Ohio Jur.** 650, we find it stated that:
"The application of this rule, (Work, inherently dangerous rule) however, is limited to dangerous work, and cannot be extended to proper work dangerously done."

The work of conveying coils of wire across a sidewalk and depositing them in the adjoining building was ▉▉▉▉ ▉ proper and contained no elements of unusual danger to anyone. Whatever danger developed resulted from the manner in which those engaged did it and their failure to exercise care while so engaged. If it can be said that delivering a roll of ordinary wire is inherently dangerous, it would be difficult to conceive of any human activity that could not be so characterized with equal regard to realities. The distinction between the relation of employer and employee on the one hand and employer and independent contractor on the other would lose significance entirely, if such transactions fall within the rule applicable to inherently dangerous work.

We conclude that the case did not involve work of an inherently dangerous character and that the court erred in instructing the jury on the law applicable to such a situation.

(2) We turn now to the other portion of this instruction, in which the court said in effect, to the jury that if it found that Nauman had actual charge and control and supplied the will or the motive, but delegated to Hacker the doing of the physical act, and Hacker was negligent, the defendant would be liable for such negligence, if all other elements of liability existed.

If the testimony of Nauman and Hacker is accepted as true, the latter was an officious intermeddler, whose acts would create a liability upon no one other than himself. However, in view of the evidence that Hacker was performing an act in furtherance of defendant's contractual duty to deliver wire coils to The Arco Wire Spring & Supply Company, in the presence and with the acquiescence of the employee sent out by defendant to represent it, this evidence is sufficient to raise the interesting question of when and under what circumstances such an employee can delegate to another the task of performing manual service, so as to bind the principal for such person's acts, and what facts will constitute a delegation. That there are circumstances under which the employee is justified in using a human instrumentality to perform or assist in performing the task is clear from the authorities, (3 Michigan Law Review, p. 198, et seq) although ordinarily no authority to appoint a subagent will be implied. §81 of the Restatement of the Law of Agency is:

"Unless otherwise agreed, a servant is not authorized to permit or employ another to perform acts of service which he is employed to perform."

It should be stated here that there is no evidence that Nauman directed Hacker as to the manner of handling the coils of wire. The most that can be said is that he saw and permitted Hacker to roll the wire down, but Hacker did it his own way, and not under the direction of Nauman. So there was no predicate in the evidence for the charge that Nauman had charge, control, supplied the will and furnished

the motive. leaving to Hacker only the doing of the physical act.

In **26 Ohio Jur. 627, et seq.,** the statement is made that: "As implied in the statement of the rule above, an employer is liable for the acts of an assistant. engaged by an employee, **only when the employee had the authority, express or implied, to engage an assistant."**

Certainly, there is no evidence of express authority to employ an assistant and the facts and circumstances fall short of raising any inference of implied authority. We are of the opinion that the court should not have submitted such an issue to the jury, but should have limited the issue to whether Hacker was an employee of the defendant supported by the admission in the original answer. The charge was erroneous in that respect.

It is urged also that the court erred in refusing to give a special charge requested by the defendant. This charge set forth the elements of the plaintiff's cause of action and concluded that "If the plaintiff had failed to produce any evidence—then your verdict shall be for the defendant."

As authority for the correctness of this charge, the court is cited to **Sobolovitz v Lubric Oil Co., 107 Oh St 204.** It is true that in that case the court stated in the syllabus as well as in the opinion that to entitle a plaintiff to recover in a personal injury case he must produce some evidence upon every material element of his case. That was a sufficiently accurate statement for that case. in which no evidence was produced by the defendant, but is not and was not intended to be used in an instruction in every case. It would have been misleading in this case where defendant. as well as the plaintiff, produced evidence. It is elementary that plaintiff is entitled to the benefit of such evidence produced by the defendant as is favorable to him.

The court did not err in refusing to give this charge

It is claimed that the court erred in refusing to give another special charge, but as this charge contained the express statement that Hacker was not an employee of the defendant, concerning which the evidence was conflicting, the court did not err in refusing it.

For these reasons, the judgment must be reversed, and the cause remanded to the Common Pleas Court for a new trial.

ROSS, PJ, and HAMILTON, J, concur.